Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Brandi Davis*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brandi Davis, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Metropolitan Life Insurance Company, Honeywell International, Inc., Disability Plan for Employees of Honeywell International, Inc., | |
| Defendants. | |

Now comes the Plaintiff, Brandi Davis (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3.

4  2.   Plaintiff is a resident of Maricopa County, Arizona.

5  3.   Upon information and belief, Defendant Honeywell International, Inc.
6  (hereinafter referred to as the "Company") sponsored and administered an Employee
7  Welfare Benefit Plan within the meaning of 29 U.S.C. §3(I) which was funded and paid for
8  through contributions made by the Company. Upon information and belief, the fund is
9  self-insured and may have been included in and part of the Disability Plan for Employees
10 of Honeywell International, Inc. (hereinafter referred to as the "Plan") which was created
11 to provide the Company's employees with welfare benefits. At all times relevant hereto,
12 the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C.
13 §1002(1).

14 4.   Upon information and belief, the Company or Plan may have retained
15 Metropolitan Life Insurance Company (hereinafter referred to as "MetLife") to
16 administer the fund and may have delegated responsibility for the claim administration to
17 MetLife. Plaintiff believes that as it relates to her claim, MetLife functioned as the Claim
18 Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or
19 the Plan may not have made a proper delegation or properly vested fiduciary authority or
20 power for claim administration in MetLife.

21 5.   Upon information and belief, the Company or Plan operated under a structural
22 conflict of interest in that it operated in dual roles as the plan and/or claims administrator
23 and payor of benefits; *to wit*, if it approved Plaintiff's claim it was also liable for payment of
24 benefits. The Company or Plan's conflict of interest may have led it to retain a company
25 such as MetLife to be the claims administrator in that the Company or Plan fully insured the

1  Plan and would directly benefit financially if MetLife administered its claims in a
2  parsimonious manner. MetLife's conflict of interest exists in that if it maintained a
3  parsimonious approach to managing the Company or Plan's claims it would benefit directly
4  by fulfilling the terms of its administrative services agreement with the Company or Plan.

5    6.  The Company, Plan and MetLife conduct business within Maricopa County
6  and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

8    7.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28
9  U.S.C. §1391.

### *Nature of the Complaint*

11   8.  Incident to her employment, Plaintiff was a covered employee pursuant to
12 the Plan and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability
13 income benefits from the Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.
14 §1132(a)(1)(B) as well as any other employee benefits from the Company she may be
15 entitled to as a result of being found disabled.

16   9.  After working for the Company as a loyal employee, Plaintiff became
17 disabled due to serious medical conditions and was unable to work in her designated
18 occupation as a Member Service Consultant on our about October 22, 2008. Plaintiff has
19 remained disabled as that term is defined in the Plan continuously since that date and has
20 not been able to return to any occupation as a result of her serious medical conditions.

21   10.  The relevant Plan provides the following definition of a covered disability
22 which applies to Plaintiff's claim:

> 'Total Disability' means that an Eligible Employee is prevented by: (1) accidental bodily injury; (2) sickness; (3) mental illness; (4) substance abuse; or (5) pregnancy from performing the essential functions of his own occupation or any job the Employer offers him, other than alternative work

duty while the Eligible Employee has a Partial Disability, for which he is reasonably qualified by reason of his education, training or experience."

11. The Plan contained a benefit waiting period of twenty-six (26) weeks, meaning MetLife had to determine Plaintiff was continuously disabled for that time period in order for her to be eligible for long term disability benefits. Thus, a prerequisite exists to Plaintiff's ability to file a claim for and to be eligible for long term disability benefits. Specifically, Plaintiff must first be found disabled pursuant to the Plan and exhaust her eligibility for short term benefits by meeting the definition of disability for twenty-six (26) weeks in order to be eligible for long term disability benefits. Plaintiff was disabled as that term is defined in the Plan for the duration of the short term disability timeframe.

12. Plaintiff applied for and received short term disability benefits for October 22, 2008 through November 16, 2008.

13. In continued support of her claim for short term disability benefits, Plaintiff submitted to MetLife a statement from one of her treating physicians dated November 10, 2008, stating that due to her serious medical conditions, Plaintiff was unable to return to work for at least "18 weeks."

14. MetLife extended Plaintiff's short term disability benefits from October 17, 2008 through December 21, 2008.

15. In a letter dated December 31, 2008, and without any evidence Plaintiff's medical condition had improved or that she was able to engage in her occupation, MetLife notified Plaintiff it was unable to extend her disability benefits past December 21, 2008, erroneously concluding that Plaintiff had failed to provide sufficient evidence to support the severity of her serious medical condition. In the denial letter, MetLife failed to provide a full and fair review pursuant to ERISA because it completely failed to reference or consider, or selectively reviewed most, if not all of the evidence submitted by Plaintiff which adequately

1  documented her continued serious medical conditions and supported the fact her medical
2  conditions had not improved and that she continued to meet the definition of disability
3  under the relevant Plan.

4     16.    MetLife's determination was further erroneous and unlawful because
5  Plaintiff's medical condition had not improved in any meaningful way which would have
6  allowed a return to work[1] from the time MetLife originally evaluated and approved her
7  disability claim; *to wit*, Plaintiff was unable to engage in her occupation.  In denying
8  Plaintiff's claim, MetLife ignored its fiduciary duty to Plaintiff by erroneously and
9  unlawfully de-emphasizing the opinions of her treating physicians who confirmed Plaintiff's
10 medical condition(s) had not improved.

11    17.    In denying Plaintiff's claim on December 31, 2008, MetLife also relied on its
12 own employees, specifically an unidentified "Clinical Specialist" and "Independent
13 Physician at MetLife."  The medical staff's opinions are flawed as they were based on the
14 same errors and omissions referenced *supra*, regarding the improper termination of benefits
15 dated December 31, 2008.  Plaintiff questions the credentials, independence, impartiality
16 and bias of MetLife's own employee(s) to fully and fairly review her claim and she believes
17 the unidentified medical staff opinions are adversarial because of the individuals' conflict of
18 interest as employees.  Plaintiff believes MetLife's financial conflict of interest is a
19 motivating factor in why it referred Plaintiff's claim to its own employees for review.

---

[1] *McOsker v. Paul Revere Life Insur.Co.,* 279 F.3d 586 (8th Cir. 2002), held that once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable.  *Also see, Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001), *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001) (burden placed on insurer to establish claimant's ability to work).

18.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the December 31, 2008 denial of her claim in a letter. In support of her appeal, Plaintiff submitted additional medical records to MetLife.  In reviewing Plaintiff's appeal, MetLife referred Plaintiff's claim for a physician consultant review, which was prepared by Dr. Sheri Phillips.

19.     MetLife and Dr. Phillips' conflict of interest are evident in the February 8, 2009 physician consultant review authored by Dr. Phillips. In her report, Dr. Phillips did not examine Plaintiff and her opinion that Plaintiff was able to perform all the essential functions of her position was based entirely on a selective review of the evidence which actually supported Plaintiff's claim and also sought to de-emphasize evidence she submitted which proved she was disabled in order to provide a reason for MetLife to justify a denial of Plaintiff's claim. MetLife's review of Plaintiff's claim was also flawed because it applied a Plan requirement/exclusion which is not set forth in relevant Plan; *to wit*, Plaintiff had to prove she met the definition of disability with objective medical evidence or objective medical findings.

20.     MetLife notified Plaintiff in a letter dated February 13, 2009 it was upholding its decision to deny her short term disability claim. In its denial, MetLife failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h). MetLife denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, failing to consider all the limitations set forth in her medical evidence, failing to fully evaluate all of Plaintiff's serious medical conditions and failing to request Plaintiff undergo an independent medical evaluation as provided for in the relevant Plan. MetLife's determination was also unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to

work from the time MetLife originally evaluated and approved her claim and MetLife required Plaintiff to prove she met the definition of disability with objective medical evidence or findings when the Plan does not require the same.

21.     The Company and MetLife's dual roles as a sole decision maker and payor of benefits in both the Plan created an inherent structural financial conflict of interest. Plaintiff believes is a reason her claim for short term disability benefits was terminated by MetLife and why they failed to provide a full or fair review pursuant to 29 U.S.C. § 2560.503-1.

22.     In evaluating Plaintiff's claim on appeal, the Plan and MetLife had an obligation pursuant to ERISA to administer her claim "solely in her best interests and other participants" which it failed to do.[2]

23.     Plaintiff believes the reason MetLife and the Company provided an unlawful review which was neither full or fair and that violated ERISA, specifically, , is due to the aforementioned dual roles they undertook as decision maker and payor of benefits in her claims which created an inherent conflict of interest and this conflict is the reason her disability claim was denied.

24.     Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of MetLife, Dr. Phillips and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any*

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  conflict of interest which may have impacted or influenced MetLife's decision to deny
2  her claim.

3      25. With regard to whether Plaintiff meets the definition of disability set forth in
4  the Plan, the Court should review the evidence in Plaintiff's claim *de novo* because the
5  unlawful violations of ERISA committed by the Plan and MetLife as referenced herein are
6  so flagrant.

7      26. As a direct result of MetLife decision to deny Plaintiff's disability claim, she
8  has been injured and suffered damages in the form of lost disability benefits in addition to
9  other potential employee benefits she may have been entitled to receive through or from the
10 Plan and/or Company as a result of being found disabled.

11      27. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
12 prejudgment interest, reasonable attorney's fees and costs from Defendants.

13      28. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum
14 pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for
15 losses she incurred as a result of Defendants' nonpayment of benefits.

16      WHEREFORE, Plaintiff prays for judgment as follows:

17      A. For an Order requiring Defendants to pay Plaintiff all disability benefits
18 due pursuant to her short term disability claim from the date she was first denied these
19 benefits through the maximum period benefits are paid and prejudgment interest thereon
20 as well as any other employee benefits she may be entitled to from the Plan and/or
21 Company as a result of being found disabled;

22      B. For an Order directing Defendants to continue paying Plaintiff the
23 aforementioned benefits until such time as she meets the Plan condition for termination of
24 benefits;

25
26

1       C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

      D.     For such other and further relief as the Court deems just and proper.

DATED this 26th of February, 2010.

SCOTT E. DAVIS. P.C.


By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff